# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION II

| STATE OF WASHINGTON, | No. 46355-5-II |
| --- | --- |
| Respondent, | |
| v. | |
| PAULO R. BOTELLO-GARCIA, | UNPUBLISHED OPINION |
| Appellant. | |

LEE, J. — Paulo R. Botello-Garcia appeals his convictions and sentence for two counts of

second degree child molestation and two counts of second degree child rape. We hold that (1) the

charging document (the information) was not constitutionally deficient; (2) the trial court erred in

admitting testimony regarding a prior incident as res gestae evidence under ER 404(b) and the

error was not harmless; and (3) the trial court did not err under ER 803(a)(4) in admitting testimony

of a nurse practitioner who examined the victim.[1]  Therefore, because the trial court erred in

---

[1] Botello-Garcia makes several additional arguments in his direct appeal and in his statement of additional grounds (SAG). Because we reverse his convictions on other grounds and remand for a new trial, we do not address these arguments. However, we address the challenge to Lisa Wahl's testimony (the nurse practitioner who interviewed and examined G.R.) because it likely will arise in the new trial.

admitting prior bad acts evidence and that error was not harmless, we reverse Botello-Garcia's convictions and remand for a new trial.

FACTS

Botello-Garcia became G.R.'s[2] stepfather in April 2001, when G.R. was four years old. Botello-Garcia was very strict with G.R. He limited her contact with friends, monitored her phone and computer use, and did not otherwise respect her privacy.

According to G.R., Botello-Garcia began touching her in ways that made her uncomfortable when she was 11 years old and in the fifth grade. She alleged that Botello-Garcia touched her breast under her shirt while she was watching television in her bedroom and made her promise not to tell anyone.

G.R. described additional touching that occurred after she turned 12 on January 14, 2009. Botello-Garcia twice took her hand and forced it down his pants to touch his penis, and he touched her vagina. G.R. added that when she was in the sixth grade, Botello-Garcia twice had her touch his penis with her mouth.

Botello-Garcia and G.R.'s mother separated at the end of 2010, and G.R. and her mother moved out of the house in January 2011. In the summer of 2011, G.R. drove with Botello-Garcia to California so that she could attend her cousin's birthday party. While they were in California, G.R. wanted to visit a friend. According to G.R., Botello-Garcia said that she needed to have sex with him first, and he attempted to rape her in the trailer where she was staying.

---

[2] We use initials to protect the witness's identity. General Order 2011-1 of Division II, *In Re The Use Of Initials Or Pseudonyms For Child Witnesses In Sex Crime Cases*, available at: http://www.courts.wa.gov/appellate_trial_courts/.

G.R. kept a journal and wrote about Botello-Garcia coming into her bedroom to touch her. Ex. 6; 1 RP 76. Her mother found the journal but did not report the abuse to law enforcement because G.R. did not want anyone to know. Law enforcement became involved when G.R. told a teacher about the touching.

The State initially charged Botello-Garcia with six counts of first degree child molestation. After the trial court granted the defense motion for a bill of particulars, the State filed several amended charging documents that culminated in a fourth amended information charging one count of first degree child molestation, two counts of second degree child molestation, and two counts of second degree child rape. The charging periods extended from September 2008 to January 2011.

During a pretrial hearing, the defense objected to the admissibility of the California incident under ER 404(b). The trial court ruled that the incident was relevant and admissible as res gestae evidence.

G.R. testified to the facts cited above and provided a detailed description of the attempted rape in California. Nurse practitioner Lisa Wahl, who interviewed and examined G.R. at a sexual assault clinic, testified about G.R.'s description of the abuse.

Three of Botello-Garcia's nieces testified on his behalf. All three stated that G.R. never talked about the alleged abuse, and they also testified that during the trip to California, G.R. and Botello-Garcia were never alone together in the trailer.

Botello-Garcia denied having sexual contact with G.R. and testified that they were never home alone together. In addition, he specifically denied the California incident.

The jury acquitted Botello-Garcia on count I—first degree child molestation but found him guilty of the remaining charges. The jury also returned special verdicts finding domestic violence, abuse of trust, and a prolonged period of ongoing abuse of the same victim under age 18. The trial court imposed an exceptional sentence by running the child rape sentences consecutively to the child molestation sentences. Botello-Garcia appeals.

## ANALYSIS

A.    SUFFICIENCY OF THE INFORMATION

Botello-Garcia argues that the information was constitutionally deficient because it omitted critical facts. We disagree.

An information must contain all essential elements of a crime to give the accused proper notice of the crime charged so that he can prepare an adequate defense. *State v. Williams*, 162 Wn.2d 177, 183, 170 P.3d 30 (2007); *State v. Kjorsvik*, 117 Wn.2d 93, 101, 812 P.2d 86 (1991). To satisfy this requirement, the information must allege every element of the charged offense and the facts supporting the elements. *State v. Nonong*, 169 Wn.2d 220, 226, 237 P.3d 250 (2010). An information may rely on the language of a statute if the statute defines the offense with certainty. *State v. Leach*, 113 Wn.2d 679, 686, 782 P.2d 552 (1989). There is no additional requirement that the State allege facts beyond those that support the elements or that the State describe the facts with great specificity. *State v. Winings*, 126 Wn. App. 75, 85, 107 P.3d 141 (2005). We review the challenge to an information de novo. *Williams*, 162 Wn.2d at 182.

When an information is challenged for the first time on appeal, as it is here, we must construe it liberally in favor of its validity. *Kjorsvik*, 117 Wn.2d at 105. In applying this liberal construction standard, we read the words in the information as a whole and consider whether the

4

necessary facts appear in any form. *Williams*, 162 Wn.2d at 185; *Kjorsvik*, 117 Wn.2d at 109. If they do, we consider whether the defendant was "'nonetheless actually prejudiced by the inartful language which caused a lack of notice.'" *Williams*, 162 Wn.2d at 185 (quoting *Kjorsvik*, 117 Wn.2d at 106).

We distinguish between an information that is constitutionally deficient and those that are merely vague. *Leach*, 113 Wn.2d at 686-87. A constitutionally deficient information is subject to dismissal for failure to state an offense by omitting allegations of the essential elements constituting the offense charged and the statute. *Leach*, 113 Wn.2d at 686-87. An information that states each statutory element of a crime, including the statute, but is vague as to some other significant matter, may be corrected under a bill of particulars. *Leach*, 113 Wn.2d at 687. A defendant may not challenge an information for vagueness on appeal if he did not request a bill of particulars at trial. *Leach*, 113 Wn.2d at 687.

The two second degree child molestation counts were charged with identical language that set forth the statutory elements:

> On or about or between January 14, 2009 and January 13, 2011, in Lewis County, State of Washington, the above-named defendant, being at least thirty-six (36) months older than G.R. (DOB: 01/14/1997), who was at least twelve (12) years old but less than fourteen (14) years old and not married to the defendant and not in a state registered domestic partnership with the defendant, did have sexual contact with G.R. (DOB: 01/14/1997), or did knowingly cause another, who was under the age of eighteen (18) years, to have sexual contact with G.R. (DOB: 01/14/1997); contrary to the Revised Code of Washington 9A.44.086.

Clerk's Papers (CP) at 31-32. The two second degree rape of a child counts also were charged with identical language that set forth the statutory elements:

> On or about or between September 1, 2009 and January 13, 2011, in Lewis County, State of Washington, the above-named defendant did have sexual

intercourse with G.R. (DOB: 01/14/1997), who was at least twelve years old but less than fourteen years old and not married to the defendant and not in a state registered domestic partnership with the defendant, and the defendant was at least thirty-six months older than G.R. (DOB: 01/14/1997); contrary to the Revised Code of Washington 9A.44.076.

CP at 33-34.

The language defining each charge was sufficient to apprise Botello-Garcia of the elements of the charged crimes and the conduct that constituted those crimes. He argues on appeal, however, that the information could have encompassed any alleged sexual misconduct against G.R. within the charging periods. He also faults the State for failing to provide a bill of particulars after filing the final information.

Botello-Garcia requested a bill of particulars after the State filed its initial information, and the trial court granted that request. In response, the State filed an amended information. The State again amended the information twice, with the final charging document being the fourth amended information.[3] Botello-Garcia's single request for a bill of particulars did not require the State to submit one after filing each amended information. *State v. Noltie,* 116 Wn.2d 831, 844, 809 P.2d 190 (1991). Any confusion as to what acts supported the charges in the fourth and final charging

---

[3] Botello-Garcia argues that the State violated his Fifth Amendment rights by amending the original information without providing additional discovery and a bill of particulars. The State may amend the charging document at any time before verdict or finding as long as the defendant's substantial rights are not prejudiced. *State v. Emery*, 161 Wn. App. 172, 201, 253 P.3d 413 (2011), *aff'd on other grounds*, 174 Wn.2d 741, 278 P.3d 653 (2012). The defendant bears the burden of demonstrating prejudice. *Emery*, 161 Wn. App. at 201.

Botello-Garcia does not meet that burden here. The State had no obligation to file a bill of particulars sua sponte, and Botello-Garcia's conclusory claim of a discovery violation does not demonstrate that discovery was withheld. *See Noltie,* 116 Wn.2d at 844.

document could have been clarified with a bill of particulars that the defense did not request. Therefore, Botello-Garcia waived any vagueness claim.

Having found that the information contained all of the essential elements, there is no need to proceed to the second prong of the *Kjorsvik* test to ask whether vague or inartful language prejudiced the defendant. 117 Wn.2d at 106; *see City of Seattle v. Termain*, 124 Wn. App. 798, 803, 103 P.3d 209 (2004) (if charging document fails essential elements test, prejudice test is not reached). Botello-Garcia has not argued that he was actually prejudiced. Nor did Botello-Garcia request a bill of particulars, which is the proper mechanism for obtaining additional information. Therefore, we hold that the fourth amended information gave Botello-Garcia sufficient notice of the charged offenses and that any allegation of prejudice is waived. Botello-Garcia's challenge to the constitutionality of the information fails.

B.     ADMISSIBILITY OF CALIFORNIA INCIDENT UNDER ER 404(B)

Botello-Garcia argues that the trial court erred under ER 404(b) in admitting evidence of the California incident, which occurred after the charging period expired. We agree.

1.  Legal Principles

Botello-Garcia argues that the trial court abused its discretion and violated his right to due process by admitting evidence of the California incident. Because our Supreme Court has held that evidentiary errors under ER 404(b) are not of constitutional magnitude, we address this claim as one of evidentiary rather than constitutional error. *State v. Smith*, 106 Wn.2d 772, 780, 725 P.2d 951 (1986) (citing *State v. Jackson*, 102 Wn.2d 689, 695, 689 P.2d 76 (1984)).

We review the interpretation of an evidentiary rule de novo as a question of law. *State v. Gunderson*, 181 Wn.2d 916, 922, 337 P.3d 1090 (2014). If properly interpreted, we review the

trial court's application of a rule to admit or exclude evidence for abuse of discretion. *State v. DeVincentis*, 150 Wn.2d 11, 17, 74 P.3d 119 (2003). An abuse of discretion occurs when the trial court's decision is manifestly unreasonable or based on untenable grounds. *Gunderson*, 181 Wn.2d at 922. The failure to adhere to the requirements of an evidentiary rule may constitute an abuse of discretion. *State v. Foxhoven*, 161 Wn.2d 168, 174, 163 P.3d 786 (2007).

Botello-Garcia contends that the trial court abused its discretion in admitting the California incident because it constituted unlawful propensity evidence. Evidence of a defendant's prior bad acts is not admissible to show that the defendant has a propensity to commit crimes, but it may be admissible for some other proper purpose. *Gunderson*, 181 Wn.2d at 921. When the State offers evidence of a defendant's prior bad acts or uncharged crimes, the trial court must (1) find by a preponderance of the evidence that the act or uncharged crime probably occurred, (2) specify the purpose for which the evidence is admitted, (3) determine that the evidence is relevant for that purpose, and (4) balance the probative value of the evidence against its prejudicial effect. *Gunderson*, 181 Wn.2d at 923. The trial court must conduct this analysis on the record. *State v. Slocum*, 183 Wn. App. 438, 448, 333 P.3d 541 (2014). If the trial court admits prior bad act evidence under ER 404(b), it must give a limiting instruction to the jury. *Gunderson*, 181 Wn.2d at 923.

As the four-part inquiry shows, ER 404(b) is read in light of ER 401, ER 402, and ER 403. *State v. Wilson*, 144 Wn. App. 166, 176, 181 P.3d 887 (2008). In close cases, prior bad act evidence should be excluded. *Id.* at 177-78. This is because such evidence presents a danger that the defendant will be found guilty not on the strength of evidence supporting the current charges,

but because of the jury's overreliance on past acts as evidence of his character and propensities. *Slocum*, 183 Wn. App. at 442.

2.    Res Gestae Evidence

Here, the trial court ruled that the California incident was admissible "res gestae" evidence. This is a recognized purpose for which prior bad act evidence is admissible under ER 404(b). *State v. Lane*, 125 Wn.2d 825, 831, 889 P.2d 929 (1995). Under the res gestae exception to ER 404(b), evidence of other bad acts is admissible to complete the story of a crime or to provide the immediate context for events close in both time and place to the charged crime. *State v. Lillard*, 122 Wn. App. 422, 432, 93 P.3d 969 (2004), *review denied*, 154 Wn.2d 1002 (2005). Our Supreme Court has described this doctrine as follows:

> Where another offense constitutes a "link in the chain" of an unbroken sequence of events surrounding the charged offense, evidence of that offense is admissible "in order that a complete picture be depicted for the jury."

*State v. Brown*, 132 Wn.2d 529, 571, 940 P.2d 546 (1997) (quoting *State v. Tharp*, 96 Wn.2d 591, 594, 637 P.2d 961 (1981)), *cert. denied*, 523 U.S. 1007 (1998).

Botello-Garcia argues that the trial court abused its discretion by admitting the California incident as res gestae evidence because it occurred six months after the charging period ended in January 2011. He contends that the timing of the attempted rape shows that it was not close in time to the charged crimes and was not part of an unbroken sequence of events.

The record shows that the trial court did not conduct an ER 404(b) inquiry. The absence of an inquiry into whether the California incident was proven by a preponderance of the evidence led to a critical misunderstanding about the timing of the incident and its admissibility as res gestae

evidence. During the hearing on this issue, the State explained the purpose of the desired res gestae evidence:

> We're trying to show a history here of sexual abuse, domestic violence, and she'll talk about . . . the incident in California which defense has been aware of for about a year and a half and she disclosed in a defense interview. Obviously, that's not charged because it can't be charged.

1 Report of Proceedings (RP) at 18. When defense counsel responded that the incident in California was separate from the crimes alleged and was not part of a pattern of behavior, the court asked when it occurred. The State responded:

> It happened—it allegedly occurred in the summer of 2010, right in the middle of all of this stuff going on. And this was over a course of time where defendant was begging to have penile vaginal intercourse consistently, almost on a weekly basis.

1 RP at 19.

When G.R. testified, she stated initially that the California incident occurred in the summer of 2010, before she and her mother moved out of the family home in January 2011. She then stated that the incident occurred in the summer of 2011, adding that she was not sure whether it occurred before or after she and her mother moved out. On cross-examination, she stated without equivocation that the California incident occurred in the summer of 2011.

Given this testimony, we reject the State's efforts to characterize the California incident as res gestae evidence.[4] To support its argument, the State cites cases where the res gestae acts

---

[4] The State does not contest Botello-Garcia's additional assertion that the California incident was inadmissible under ER 404(b) as evidence of a common scheme or plan. *See Slocum*, 183 Wn. App. at 451 (to make up part of common plan, multiple acts must share substantially similar features). Given the trial court's failure to rely on this exception and the State's failure to address it on appeal, we will not consider this alternative theory of admissibility further.

occurred within a few days or hours of the charged offenses. *Brown*, 132 Wn.2d at 541-48; *State v. Hughes*, 118 Wn. App. 713, 718-20, 725, 77 P.3d 681 (2003), *review denied*, 151 Wn.2d 1039 (2004). Here, the prior bad act occurred six months after the charging period ended. Had the trial court conducted a proper ER 404(b) inquiry, it likely would have discovered that the California incident was not part of an unbroken sequence of events and was not relevant res gestae evidence.

3.  ER 403 Balancing

Further error occurred when the trial court failed to balance the probative value of this evidence against its prejudicial effect, as ER 404(b) and ER 403 require. The importance of making such a record cannot be overemphasized. *Jackson*, 102 Wn.2d at 694. "The process of articulating the prejudice, and comparing it to probative value, ensures a 'thoughtful consideration' of their relative weight." *State v. Carleton*, 82 Wn. App. 680, 686, 919 P.2d 128 (1996) (quoting *Jackson*, 102 Wn.2d at 694). The balancing of potential prejudice against probative value is particularly important in sex cases, "where the prejudice potential of prior acts is at its highest." *State v. Saltarelli*, 98 Wn.2d 358, 363, 655 P.2d 697 (1982).

Courts have identified two circumstances where the failure to weigh prejudice on the record under ER 404(b) may be harmless error. *Carleton*, 82 Wn. App. at 686. First, a failure to balance the potential prejudice against the probative value of the evidence is harmless when the record is sufficient for the reviewing court to determine that the trial court, had it considered the relative weight of probative value and prejudice, would still have admitted the evidence. *Carleton*, 82 Wn. App. at 686; *State v. Gogolin*, 45 Wn. App. 640, 645, 727 P.2d 683 (1986). Given the trial court's misunderstanding about the timing of the California incident, we cannot make this determination.

Second, the failure to conduct this analysis also may be considered harmless when, considering the untainted evidence, we can conclude that the result would have been the same even if the trial court had not admitted the evidence at issue.[5] *Carleton*, 82 Wn. App. at 686-87. "The improper admission of evidence constitutes harmless error if the evidence is of minor significance in reference to the overall, overwhelming evidence as a whole." *State v. Bourgeois*, 133 Wn.2d 389, 403, 945 P.2d 1120 (1997).

We cannot conclude that the admission of G.R.'s testimony about the California incident was of minor significance in light of the overall evidence. G.R. testified at length and in considerable detail about this incident, and several defense witnesses were questioned closely about whether it could have occurred. As the State admitted during closing argument, there was a "lot of discussion" during trial about the attempted rape in California. 6 RP at 790.

Also, the absence of the required limiting instruction heightened the prejudicial impact of this evidence. *See Gunderson*, 181 Wn.2d at 923 (stating without qualification that trial court must give limiting instruction if ER 404(b) evidence admitted); *State v. McCreven*, 170 Wn. App. 444, 458, 284 P.3d 793 (2012) (same), *review denied*, 176 Wn.2d 1015 (2013). The trial court never instructed the jury that it was not to consider the California incident as evidence of Botello-Garcia's propensity to commit sex crimes. The failure to give this instruction, combined with the failure to conduct the proper four-part ER 404(b) inquiry, was not harmless in this case.

---

[5] The State argues that the jury's acquittal on the first degree child molestation charge supports a conclusion of harmless error. This acquittal apparently was based on insufficient evidence that G.R. was younger than 12 when the offense allegedly occurred. RCW 9A.44.083; 6 RP 820-21. The split verdict does not affect our harmless error analysis. *Carleton*, 82 Wn. App. at 687.

Because the trial court abused its discretion in admitting the prior bad act evidence and that error was not harmless, we must reverse the convictions.

C.      Admissibility of Nurse Practitioner Testimony

Botello-Garcia also argues that the trial court erred in admitting testimony from Lisa Wahl, the nurse practitioner who interviewed and examined G.R., under ER 803(a)(4).  The trial court allowed Wahl to testify about G.R.'s statements because they were part of her diagnosis and treatment.  2 RP 242.

We review the trial court's ruling for abuse of discretion.  *State v. Hamlet*, 133 Wn.2d 314, 324, 944 P.2d 1026 (1997).  There is an exception to the hearsay prohibition for statements made for purposes of medical diagnoses or treatment under ER 803(a)(4).  *State v. Doerflinger*, 170 Wn. App. 650, 664, 285 P.3d 217 (2012), *review denied*, 177 Wn.2d 1009 (2013).  A party demonstrates that a statement is reasonably pertinent to medical treatment when (1) the declarant's motive in making the statement is to promote treatment and (2) the medical professional reasonably relied on the statement for purposes of treatment.  *State v. Williams*, 137 Wn. App. 736, 746, 154 P.3d 322 (2007).

Statements during a medical examination conducted for both medical and forensic purposes are admissible under ER 803(a)(4).  *Williams*, 137 Wn. App. at 746-47.  And in sexual abuse cases, statements identifying the perpetrator are admissible.  *State v. Ackerman*, 90 Wn. App. 477, 482, 953 P.2d 816 (1998).  Thus, the trial court did not abuse its discretion in admitting Wahl's testimony concerning G.R.'s allegations.

No. 46355-5-II

We reverse Botello-Garcia's convictions and remand for a new trial.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Lee, J.

We concur:

_____
Bjorgen, C.J.

_____
Maxa, J.